## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MATTHEW K. FIELDS, | Civil Action No. 1:24-CV-02032-AT |
| Plaintiff, | |
| v. | |
| AMAZON LOGISTICS INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMAZON LOGISTICS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Defendant Amazon Logistics, Inc. ("Amazon") moves the Court to compel arbitration pursuant to the parties' arbitration agreement and stay this litigation pending arbitration. The arbitration agreement covers all claims alleged in the complaint (Dkt. 1) and is enforceable under federal and state law. Amazon therefore respectfully requests an order enforcing the parties' arbitration agreement.

## I.    INTRODUCTION

When Plaintiff Matthew K. Fields signed up to perform local deliveries through Amazon Flex, he agreed to arbitrate related disputes. Although he originally brought the present dispute before the American Arbitration Association ("AAA") as his agreement requires, he abandoned the arbitration and improperly filed this action. The Court should compel Plaintiff to return to the arbitration he started.

-1-

Amazon anticipates Plaintiff will try to shirk his agreement by invoking Section 1 of the Federal Arbitration Act ("FAA"). That provision excludes from the FAA's usual coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Any attempt by Plaintiff to invoke this exemption would fail. The Supreme Court has repeatedly recognized the "narrow" scope of this transportation worker exemption. *See Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citation omitted); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001). And under controlling Eleventh Circuit precedent, local delivery drivers like Plaintiff—who pick up goods within a state and deliver them to customers in the same state—do not come within the exemption merely because *other classes of workers* may have previously transported those goods across state lines. *See Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1349-51 (11th Cir. 2021); *Nunes v. LaserShip, Inc.*, No. 1:22-cv-02953-SDG, 2023 WL 6326615, at *2-3 (N.D. Ga. Sept. 28, 2023). Plaintiff's agreement to arbitrate is binding, valid, and enforceable under the FAA.

And even if Plaintiff's agreement were exempt from the FAA, it would still be binding, valid, and enforceable under state law. *See, e.g.*, *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294 (3d Cir. 2021) (explaining that even when the FAA Section 1 exemption applies, "the parties still have an agreement to arbitrate, and if

federal law does not govern the arbitrability of their contract, *some* law must."). Plaintiff's agreement expressly states that if a court finds the FAA inapplicable, Delaware law applies. And like the FAA, Delaware law has a strong policy in favor of enforcing arbitration agreements. Unlike the FAA, though, Delaware law has no carveout for transportation workers. Plaintiff's arbitration agreement is therefore enforceable under Delaware law regardless of the FAA's applicability. *See, e.g.*, *Melikyan v. Amazon.com, Inc.*, No. 21-cv-8715, 2023 WL 4505065, at *3 (C.D. Cal. July 5, 2023) (enforcing Amazon Flex arbitration agreement under Delaware law without deciding whether the FAA governs).

All roads therefore lead to arbitration. Whether under federal law, state law, or both, the Court should compel Plaintiff to arbitrate this dispute and should stay this litigation.

## II.   RELEVANT BACKGROUND

### A.   Amazon Flex and the Terms of Service

Affiliates of Amazon.com, Inc. sell products through a variety of channels, including the Amazon.com website, mobile applications, and retail locations like Whole Foods Market. *See* Declaration of John Rodgers ("Rodgers Decl."), ¶¶ 4-5. Amazon Logistics, Inc. contracts with third-party contractors—including individual independent contractor "Delivery Partners" who, like Plaintiff, sign up to become eligible to perform delivery blocks through a smartphone application-based program

called Amazon Flex. *Id.* ¶¶ 3, 6. Amazon Flex Delivery Partners use personal vehicles to make local deliveries of groceries, food, and other goods to customers. *Id.* ¶¶ 6, 11-21. For example, during his time as a Delivery Partner, Plaintiff performed nearly all his deliveries either within the Atlanta area or within the area around Birmingham, Alabama. *Id.* ¶ 28. To sign up with Amazon Flex, a prospective Delivery Partner must download the Amazon Flex app, create an account, select a local area in which they wish to make deliveries, and accept the Amazon Flex Independent Contractor Terms of Service. *Id.* ¶¶ 20-21.

In signing up to become eligible to make Amazon Flex deliveries, Plaintiff clicked a button on October 21, 2022 signifying that he accepted the then-applicable version of the Amazon Flex Independent Contractor Terms of Service as whole. *Id.* ¶¶ 23-25 & Ex. A ("TOS"). He clicked another button specifically signifying his agreement to arbitrate. *Id.* ¶¶ 24, 26.

Section 11(a) of the TOS is a broad, mutual agreement to arbitrate:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT OR TRIAL BY JURY, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES.

TOS § 11(a).

-4-

The TOS also delegates disputes over arbitrability to the arbitrator.  It does so by providing for arbitration under the AAA's Commercial Arbitration Rules, which empower the arbitrator to decide questions of arbitrability. TOS § 11(i); *see* Am. Arb. Ass'n, Commercial Arbitration Rules & Mediation Procedures R-7(a), at (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf.  In addition, the TOS explains that while courts will resolve disputes about the validity and enforceability of the TOS as a whole, the applicability of the FAA exemption, and the validity and enforceability of the TOS's class, collective, and representative action waivers, the "arbitrator must resolve all other disputes, including all other disputes about the arbitrability of claims" under Section 11(a), TOS § 11(j).

Section 12 is the TOS's "Governing Law" provision.  It states the general rule that "[t]he interpretation and enforcement of this Agreement is governed by the law of the state of Delaware without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law." TOS § 12. It goes on to state:

> If, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware and the Delaware Uniform Arbitration Act, 10 Del. C. § 5701 et seq. will govern Section 11 of this Agreement, including without limitation the common law of contracts of such state in the event that any statute could be interpreted as limiting the right of Amazon or you to arbitrate disputes pursuant to Section 11 of this Agreement.

*Id.*

**B.    Plaintiff's Dispute**

Last year, Plaintiff filed a demand for arbitration with AAA. Declaration of Sean P. Lynch ("Lynch Decl.") ¶¶ 2-3. On Plaintiff's description, the dispute centered on Plaintiff's alleged misclassification and alleged denial of workplace protections. *Id.*, Ex. A. Along with his demand for arbitration, Plaintiff submitted a copy of the TOS. *Id.*, ¶ 4 & Ex. B. Amazon paid AAA $2,000—its portion of the required arbitration administrative fee—and an arbitrator was appointed. *Id.* ¶ 5. But on November 1, 2023, Plaintiff announced his desire to remove the dispute from arbitration so he could pursue his claims in court. *Id.* ¶ 6. The AAA later closed the arbitration. *Id.* ¶ 7.

Plaintiff filed this action in the Magistrate Court of Gwinnett County, Georgia on April 22, 2024. Doc. #1-1. Proceeding pro se, he filed a statement of claim asserting violations of the Fair Labor Standards Act and alleging that he had been misclassified as an independent contractor and been denied certain workplace protections. *Id.* Amazon timely removed the action to this Court on May 9, 2024. (Dkt. #1).

## III.   ARGUMENT

### A.   Given Plaintiff's initiation of an arbitration of this dispute, the Court should refuse to entertain any challenges to arbitration.

Any attempt Plaintiff might make to avoid arbitration should fail at the threshold. Under binding precedent, Plaintiff's decision to initiate arbitration of this dispute last year precludes him from objecting to arbitration now. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 584 (5th Cir. 1980).[1] In *Piggly Wiggly*, the court held that submitting a dispute to arbitration precluded a party from later arguing that the dispute was not subject to arbitration. *Id.* The court connected this conclusion to principles of "waiver," "estoppel," and/or a "new contract" between the parties. *Id.*

The same conclusion is appropriate here. Plaintiff made the decision to file a demand for arbitration of this dispute with AAA based on the TOS. Lynch Decl. ¶¶ 2-4 & Exs. A-B. Amazon went forward with the arbitration in good faith and paid AAA $2,000 to appoint the arbitrator and schedule the initial conference. *Id.* ¶ 5. Only then did Plaintiff reverse course and withdraw his arbitration demand, prompting AAA to close the case. *Id.* ¶¶ 6-7. In these circumstances, Plaintiff has

---

[1] Fifth Circuit decisions before October 1, 1981 are binding precedent within the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

"waive[d] any objection he has to the enforcement of the arbitration agreement." *Garcia v. Amazon.com Servs. LLC*, No. 21-cv-604, 2021 WL 2954088, at *5 (C.D. Cal. May 25, 2021) (declining to entertain Amazon Flex Delivery Partner's challenges to arbitration because he had initiated an arbitration and caused Amazon to pay arbitration-initiation fees); *see also, e.g.*, *Mays v. Lanier Worldwide, Inc.*, 115 F. Supp. 2d 1330, 1340 (M.D. Ala. 2000) ("[T]he court agrees with Defendants that, by his voluntary initiation of and participation in the arbitration proceedings, Plaintiff has waived his right to contest the validity of the arbitration clause."); *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 698 (6th Cir. 2019) (holding that party that "initiated the arbitration . . . and waited to challenge the Agreement's arbitration provisions until after the arbitration was in motion . . . missed the chance to come back later, before a court, and deny that a valid agreement to arbitrate existed." (citation, emphasis, and brackets omitted)).

## B. Plaintiff agreed to arbitrate and agreed to delegate disputes over arbitrability to the arbitrator.

Even if Plaintiff could lawfully object to arbitration despite his prior conduct, the ultimate outcome would be the same. Settled law requires Plaintiff to arbitrate.

The first task of a court asked to enforce an arbitration agreement is to determine whether the parties have a valid agreement. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *B&Z Auto Enterprises, LLC v. Autotrader.com, Inc.*, No. 1:16-cv-2313-MHC, 2017 WL

7611519, at *2 (N.D. Ga. Mar. 13, 2017). To do so, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under any potentially applicable body of state law, Plaintiff formed a binding contract by accepting the version of the TOS that governed when he signed up with the program. The TOS provides that it is generally governed by Delaware law. The requirements for contract formation under Delaware law do not differ in any material way from the requirements under Georgia law: both states require offer and acceptance (*i.e.*, assent), plus consideration. *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (identifying the basic requirements for contract formation under Delaware law); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1373 (11th Cir. 2005) (Georgia law).[2]

These requirements are all met here. Plaintiff manifested assent to the TOS on October 21, 2022, by clicking buttons signifying acceptance of the agreement as a whole and its arbitration provision. *See supra* p. 4; Rodgers Decl. ¶¶ 23-26. And consideration is present as well because the TOS contains mutual promises to arbitrate and gives Plaintiff other rights as well. *See, e.g.*, *Caley*, 428 F.3d at 1376. Plaintiff himself has recognized the TOS as a valid contract between the parties, as

---

[2] Plaintiff also performed a significant number of deliveries in Alabama, which has similar requirements for contract formation. *See, e.g.*, *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017).

he submitted the TOS to the AAA along with his arbitration demand. Lynch Decl., ¶¶ 3-4 & Ex. B.

When the parties have agreed to arbitrate, courts often ask next whether the agreement encompasses the present dispute. But when the parties' agreement includes a delegation provision, they leave such arbitrability questions for the arbitrator. *See, e.g.*, *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295-96 (11th Cir. 2022). Here, the TOS delegates threshold disputes over arbitrability, including any dispute over the scope of the arbitration provision, to the arbitrator. It does so in two ways.

First, the TOS adopts the AAA Commercial Arbitration Rules. TOS § 11(i). Those rules give the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a), at (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf. The Eleventh Circuit has repeatedly held that "[b]y incorporating this AAA rule about the arbitrator's 'power to rule on his or her own jurisdiction' into their agreement, [contracting parties] clearly and unmistakably agree[] to arbitrate threshold arbitrability disputes." *Attix*, 35 F.4th at 1298; *see also, e.g.*, *JPay, Inc. v. Kobel*, 904 F.3d 923, 938 (11th Cir. 2018) (affirming that incorporation of the AAA

Commercial Arbitration Rules constitutes a delegation provision). Under this precedent, "incorporating the AAA's jurisdictional rules into an agreement constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability even if no other delegation language appears elsewhere in the contract." *Attix*, 35 F.4th at 1298.

Here, however, the TOS does include additional delegation language. Subject to certain exceptions not relevant here, the TOS expressly requires the arbitrator to resolve disputes over the "arbitrability of claims" under Section 11(a). TOS § 11(j). This express delegation clause would independently require Plaintiff to arbitrate arbitrability disputes, particularly given the comprehensive scope of Section 11(a), which requires arbitration of any dispute or claim arising out of or relating in any way to the agreement. *See, e.g.*, *JPay*, 904 F.3d at 939 (finding an express delegation in provisions that "[t]he ability to arbitrate the dispute, claim or controversy shall likewise be determined in the arbitration" and that later referred to "the foregoing Agreement of the parties to arbitrate any and all such disputes" (emphasis omitted)).

Because the scope of the arbitration provision is for the arbitrator to decide, the Court should compel arbitration without resolving whether the arbitration provision extends to Plaintiff's underlying claim. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). But even if the TOS lacked a delegation provision, there is no genuine doubt about whether its arbitration

provision extends to Plaintiff's Fair Labor Standards Act claim. Plaintiff seeks to contest his classification as an independent contractor in the Amazon Flex program, on the premise that he should be classified as an employee instead. *See* Doc. #1-1. This claim and dispute readily qualifies as a dispute or claim "arising out of or relating in any way to [the TOS] . . . , to [Plaintiff's] participation in the [Amazon Flex] Program, or to [his] performance of Services." TOS § 11(a) (some capitalization omitted). The TOS arbitration provision readily covers the present dispute.

### C.      The FAA requires enforcing Plaintiff's arbitration agreement.

The FAA's strong pro-arbitration policy requires courts to "rigorously" enforce arbitration agreements according to their terms. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (citation omitted). For example, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024);[3] *see also, e.g.*, *Dean Witter Reynolds, Inc.*

---

[3] *Spizzirri* makes clear that the appropriate way to enforce an arbitration agreement in this procedural posture is by staying, rather than dismissing, the litigation. 144 S. Ct. at 1176. Amazon therefore has not moved in the alternative for dismissal of the action. A motion to compel arbitration and stay litigation is a proper pre-answer motion under settled authority. *E.g.*, *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, No. 19-cv-334, 2019 WL 12381095, at *2 (M.D. Fla. Dec. 18, 2019); *Clowers Commc'ns, LLC v. SkyCom USA, LLC*, No. 1:14-CV-0291-ODE, 2014 WL 12629947, at *3 (N.D. Ga. Oct. 7, 2014). Of course, were the Court to deny this motion, Amazon would timely file an answer or Rule 12 motion.

*v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

The FAA applies here. The parties selected the FAA to govern their arbitration agreement. *See* TOS § 12. And even apart from the TOS's choice-of-law provision, the FAA's basic coverage generally extends to arbitration agreements in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. There is no question that Amazon Flex transactions involve interstate commerce within the meaning of Section 2, because Section 2's use of the phrase "involving commerce" establishes Congress's "intent to regulate to the full extent of its commerce power." *Cir. City*, 532 U.S. at 114. The TOS thus triggers the FAA's basic coverage.

Plaintiff's only contrary argument would be that the TOS falls within the statute's carveout for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has repeatedly instructed that the Section 1 exemption has a "'narrow' scope," *Bissonnette*, 601 U.S. at 256 (citation omitted), because it is written using more restrictive phrasing ("engaged in foreign or interstate commerce") than the expansive language of Section 2 ("involving commerce"), *see Cir. City*, 532 U.S. at 115-16. Although some courts have erroneously determined

that the Amazon Flex TOS falls within the exemption, *see Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020), those cases conflict with controlling Eleventh Circuit precedent.

In *Hamrick*, the Eleventh Circuit explained what it means for a class of workers to be "engaged in foreign or interstate commerce" within the meaning of the FAA. The "class of workers must, in the main, '"actually engage" in the transportation of goods in interstate commerce.'" *Hamrick*, 1 F.4th at 1346 (citation omitted). The plaintiffs in *Hamrick* were "final-mile delivery drivers—drivers who make local deliveries of goods and materials that have been shipped from out-of-state to a local warehouse." *Id.* at 1340. They argued "that drivers performing intrastate trips" are engaged in interstate commerce for purposes of 9 U.S.C. § 1 if "they transport items which had been previously transported interstate." *Id.* at 1346. The Eleventh Circuit rejected that argument. It explained that the text of 9 U.S.C. § 1 "focus[es] on what a class of *worker* must be engaged in doing and not the *goods*." *Id.* at 1349; *id.* at 1350 ("Section one is directed at what the class of workers is engaged in, and not what it is carrying."); *id.* at 1351 (holding that it was "error" for the district court to "conclude[] that the drivers fell within the transportation worker exemption because 'the goods at issue in this case originated in interstate commerce and were delivered, untransformed, to their destination'" and because the

"deliveries . . . were 'from out of state merchants delivering to customers in the local area'" (brackets omitted)).

Under *Hamrick*'s binding construction of 9 U.S.C. § 1, the exemption "requir[es] that the class of workers actually engages in the transportation of persons or property between points in one state (or country) and points in another state (or country)." *Id.* The Eleventh Circuit deliberately declined to follow the contrary approach of the Ninth and First Circuits in *Rittmann* and *Waithaka*. Instead, it specifically embraced the *Rittmann* dissent. *Hamrick*, 1 F.4th at 1350 (quoting *Rittmann*, 971 F.3d at 926 (Bress, J., dissenting)).

*Hamrick*'s reasoning forecloses any argument that Plaintiff falls within the scope of the exemption. Plaintiff belongs to a class of local delivery drivers that use ordinary vehicles, like their own cars, to deliver customer orders within a local area during "delivery blocks" that typically last between two to six hours. Rodgers Decl. ¶¶ 11, 20. Amazon Flex deliveries include goods that are already in the same state as the customer at the time they are ordered—including grocery and food orders from Whole Foods Market stores, goods picked up from other retail stores like OfficeMax, and items available for fast, same-day delivery. *Id.* at ¶¶ 12-14. Some Amazon Flex drivers also pick up "brown box" packages of items warehoused in Amazon fulfillment centers. *Id.* ¶ 15. Even in this last category, the goods are often in the same state as the customer at the time the customer orders them. *Id.* ¶ 16. And

when they are not, the Amazon Flex drivers still play no role in the long-haul transportation of those goods across state lines. Several distinct classes of workers engage in that long-haul interstate transportation by loading the airplanes and/or tractor-trailers, piloting or driving them, and unloading them. *Id.* ¶¶ 10, 16. Another class of workers sorts and batches the goods after the long-haul transportation concludes. *Id.* ¶ 16. And even when the goods had to cross state lines to get from an out-of-state fulfillment center to an in-state location, there is still generally at least one, and often more than one, wholly intrastate journey between the in-state sort center and the in-state delivery station, with more loading and unloading, batching and rebatching along the way by yet other distinct classes of workers. *Id.* ¶¶ 16-17. The activities of these multiple other classes of workers occur *before* Amazon Flex drivers like Plaintiff pick up the batch of items for their delivery block, load those items into their cars, and take them short distances to local customers. *Id.* ¶¶ 18-19. Amazon Flex drivers do not interact with the workers or vehicles that transport the goods across state lines. *See id.* ¶¶ 19-20. If anything, this is an even easier case than *Hamrick* because the record underscores that Amazon Flex drivers are many steps removed from any long-distance transportation across borders.

Numerous cases have properly held that local delivery drivers who perform the sorts of activities that Plaintiff performed are not exempt from the FAA. A court in this District, for example, recently held that so-called "last mile" drivers, who

"pick[ed] up packages from [the company's] warehouse and deliver[ed] them to local customers," were not exempt from the FAA. *Nunes*, 2023 WL 6326615, at *1. The court found the case governed by *Hamrick*—which had addressed "an almost identical factual scenario." *Id.* at *2. Because the plaintiffs' "job entail[ed] sorting and loading packages from the local LaserShip warehouse and delivering the goods locally," the plaintiffs did "not actually engage in interstate commerce" within the meaning of Section 1. *Id.* at *3. In reaching this conclusion, the *Nunes* court explicitly rejected the plaintiffs' argument "that last-mile delivery drivers are engaged in interstate commerce because the goods they transport have traveled interstate and remain in the stream of commerce until delivered." *Id.*

The *Nunes* court noted that its conclusion was also supported by other recent cases. For example, the Fifth Circuit recently "held that a last-mile delivery driver who 'picked up items from a Houston warehouse (items shipped from out of state) and delivered them to local customers' did not engage in interstate commerce and was not exempt under § 1 of the FAA." *Nunes*, 2023 WL 6326615, at *3 (quoting *Lopez v. Cintas Corp.*, 47 F.4th 428, 430-32 (5th Cir. 2022)). And the Supreme Court had "recently held that, for a 'class of workers' to be 'engaged in foreign or interstate commerce,' they must be 'directly involved in transporting goods across state or international borders.'" *Nunes*, 2023 WL 6326615, at *3 (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022)); *see also, e.g., Carrion v. Miami Lakes AM,*

*LLC*, No. 23-cv-22700, 2023 WL 7299953, at *3 (S.D. Fla. Nov. 6, 2023) (recognizing that under *Hamrick*, being "engaged in moving goods that at some point travel through interstate commerce" is not enough to trigger the exemption); *O'Bryant v. Flowers Foods, Inc.*, 629 F. Supp. 3d 377, 388 (D.S.C. 2022) (following *Hamrick* to conclude that "Plaintiff was not actually 'engaged in foreign or interstate commerce' in the sense relevant to § 1's residual clause because his deliveries were purely intrastate").[4]

The Supreme Court's recent decisions on the FAA exemption—while not explicitly resolving the status of local delivery drivers under the FAA—further support *Hamrick*'s instruction to focus on what the workers actually do, rather than where the goods have been. In *Saxon*, the Court rejected the plaintiff's preferred industrywide approach that would apply the exemption based on the broader activities of the company for which the workers perform their activities, rather than the activities of the workers themselves. 596 U.S. at 455-56. The Court emphasized that under its precedent, exempt classes of workers "must at least play a direct and

---

[4] *See also, e.g.*, *Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022) (holding that delivering goods from local restaurants and grocery and retail stores does not trigger the exemption); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (holding that delivering orders from local restaurants does not trigger the exemption); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 839 (N.D. Ill. 2021) (holding that delivering goods from local retail stores does not trigger the exemption); *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1233-36 (S.D. Fla. 2021); (holding, even before *Hamrick*, that "same day" deliveries of items "from local warehouses, merchants, or pharmacies" do not trigger the exemption).

'necessary role in the free flow of goods' across borders" and "be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 458. The Supreme Court reinforced this approach most recently in *Bissonnette*, 601 U.S. at 253-54, 256. In doing so, the Court easily rejected the suggestion that the exemption could extend to all workers who handle goods that "move in interstate commerce." *Id.* at 256.[5]

In sum, Plaintiff does not belong to a class of workers that "actually," *Hamrick*, 1 F.4th at 1350, "directly," *Saxon*, 596 U.S. at 457, or "actively" engages in the transportation of goods across state borders, *Bissonnette*, 601 U.S. at 256 (citation omitted). His arbitration agreement therefore is not exempt from the FAA, and the FAA requires enforcing his agreement and staying this litigation under 9 U.S.C. § 3; *Spizziri*, 144 S. Ct. at 1177.

---

[5] The ultimate holding in *Bissonnette* was that "[a] transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by § 1." 601 U.S. at 256. That holding abrogates the Eleventh Circuit's prior case law holding that, in addition to actually engaging in foreign or interstate commerce, exempt workers must also work in the transportation industry. *See Hamrick*, 1 F.4th at 1349 (citing *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005)). But that additional requirement is irrelevant here because regardless of whether Plaintiff works in the transportation industry, he was not actually engaged in interstate commerce within the meaning of 9 U.S.C. § 1. *See Nunes*, 2023 WL 6326615, at *3 (holding that plaintiff "last-mile delivery drivers" were exempt under *Hamrick* even though they undoubtedly worked in the transportation industry).

**D.    Delaware law requires enforcing Plaintiff's agreement.**

Even if the FAA were inapplicable, Plaintiff's agreement would require him to arbitrate. It is firmly settled that contracting parties may make their arbitration agreements enforceable under state law even if those agreements are exempt from the FAA. *See, e.g.*, *Harper*, 12 F.4th at 294-96 (ruling that a district court was *obligated* to decide whether an earlier version of the Amazon Flex TOS was enforceable under state law before it could order discovery into the potential applicability of the FAA's transportation worker exemption); *Powell v. Carey Int'l, Inc.*, No. 05-cv-21395, 2006 WL 8434352, at *2-3 & n.5 (S.D. Fla. Nov. 17, 2006) (compelling arbitration under Florida arbitration law on the assumption that the plaintiffs were exempt transportation workers); *Guidice v. Sage Corp.*, No. 06-cv-80659, 2006 WL 8433427, at *2 (S.D. Fla. Nov. 6, 2006) (same); *Harper v. Amazon.com Servs. Inc.*, No. 19-cv-21735, 2022 WL 17751465, at *8-10 (D.N.J. Dec. 19, 2022) (compelling arbitration under Washington and New Jersey arbitration law, based on earlier version of the Amazon Flex TOS, without deciding whether the FAA exemption applied).

The TOS expressly provides for its enforcement under state law as a fallback to the FAA. Its choice-of-law provision states that the FAA generally governs Section 11 (the arbitration provision), but that "[i]f, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section

-20-

11 of this Agreement, the law of the state of Delaware and the Delaware Uniform Arbitration Act, 10 Del. C. § 5701 et seq. will govern." TOS § 12. So, if the Court finds that the FAA does not apply to Section 11, it should nonetheless enforce the arbitration agreement under Delaware law. *See Melikyan*, 2023 WL 4505065, at *3 (compelling Amazon Flex Delivery Partner to arbitrate under Delaware law without deciding whether the FAA governs).

Much like federal law under the FAA, "[t]he public policy of [Delaware] favors the resolution of disputes through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (citation omitted). Delaware carried out that pro-arbitration policy when it "enacted a Uniform Arbitration Act" that is "similar to the [FAA]." *Id.* (citing Del. Code tit. 10, §§ 5701-5725). As with the FAA, "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999). Delaware's arbitration statute, however, has no exemption for transportation workers. So courts enforce arbitration provisions that are, or may be, exempt from the FAA when the contract specifies Delaware state law as a fallback to the FAA. *See, e.g.*, *Melikyan*, 2023 WL 4505065, at *3 (enforcing an earlier version of the Amazon Flex TOS under its Delaware choice-of-law provision); *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 3475621, at *4 (S.D.N.Y. Aug. 6, 2021) (enforcing an FAA-exempt arbitration agreement under its Delaware choice-of-law provision).

The *Melikyan* case is directly on point. There, as here, an Amazon Flex Delivery Partner sued Amazon Logistics, Inc. (and several affiliates) in court despite having agreed to arbitrate through an earlier version of the TOS. *Melikyan*, 2023 WL 4505065, at *1. The court decided that it "need not determine whether plaintiff [was] exempt from the FAA . . . because state law [was] also applicable to the arbitration agreement[]." *Id.* Much as here, the contract stated, "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11 of this Agreement." *Id.* at *2 (citation omitted). The court saw no reason not to enforce the agreement under Delaware law, and so it granted Amazon's motion to compel arbitration and stayed the litigation pending arbitration. *Id.* at *3.

The Court should do likewise here if it finds the TOS exempt from the FAA. There is no basis not to enforce Plaintiff's agreement under Delaware law.

## IV.   CONCLUSION

For all these reasons, the Court should compel Plaintiff to arbitrate and should stay this litigation pending the conclusion of arbitration.

Dated:  June 10, 2024

Respectfully submitted,

Sean P. Lynch (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
Tel.:  (609) 919-6611
Fax:   (877) 432-9652
sean.lynch@morganlewis.com

*/s/ Adonica N. Plummer*
Adonica N. Plummer
GA Bar No. 770280
LITTLER MENDELSON, P.C.
3424 Peachtree Rd NE Suite 1200
Atlanta, GA  30326
Tel.:  (404) 233-0330
Fax:   (404) 233-2361
aplummer@littler.com

Michael E. Kenneally (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel.:  (202) 739-5893
Fax:   (202) 739-3001
michael.kenneally@morganlewis.com

*Attorneys for Defendant*
*Amazon Logistics, Inc.*

## CERTIFICATE OF FONT COMPLIANCE

The undersigned hereby certifies that this pleading complies with the font requirements of LR 5.1B because the document has been prepared in Times New Roman, 14 point.


Dated: June 10, 2024                    */s/ Adonica N. Plummer*
                                        Adonica N. Plummer

                                        *Attorney for Defendant*
                                        *Amazon Logistics, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MATTHEW K. FIELDS,

      Plaintiff,

   v.

AMAZON LOGISTICS INC.,

      Defendant.

Civil Action No. 1:24-CV-02032-AT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 10, 2024, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMAZON LOGISTICS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Plaintiff's counsel of record as follows:

William S. Cleveland
POOLE HUFFMAN, LLC
billy@poolehuffman.com

*/s/ Adonica N. Plummer*
Adonica N. Plummer
GA Bar No. 770280

-1-