**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MATTHEW K. FIELDS, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON LOGISTICS, INC., <br><br> Defendant. | Case No. 1:24-cv-02032-AT |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND STAY LITIGATOIN**

Plaintiff Matthew K. Fields submits this opposition to Defendant Amazon Logistics, Inc.'s Motion to Compel Arbitration and Stay Litigation (ECF No. 11).

**I.   INTRODUCTION**

In 2020, the Ninth Circuit held in a nationwide class and collective action (alleging that Amazon had misclassified its Amazon Flex drivers as independent contractors) that Amazon's arbitration agreements were unenforceable because Amazon Flex drivers like the plaintiff in this case, Matthew Fields, were exempt from the Federal Arbitration Act ("FAA") under the Section 1 transportation worker exemption. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). Following that decision, Amazon rolled out new arbitration agreements to putative class and collective action members across the country, including Fields. Amazon now seeks

1

to enforce its new agreement by compelling Fields in this individual case to arbitration.

Amazon first argues that Fields waived his objection to arbitrability by filing a *pro se* demand for arbitration, which he withdrew less than three months later. The argument fails because there were no proceedings in arbitration, much less enough litigation to justify waiver. In fact, the arbitration ended before any initial conference. (Lynch Decl. ¶ 6).

Amazon next argues that its arbitration agreement should be enforced under the FAA because Amazon Flex drivers perform only local deliveries. The Ninth Circuit in *Rittmann* and other courts have uniformly rejected this same argument. The law is clear that workers need not themselves cross state lines to be exempt under the Section 1 transportation worker agreement from the FAA. Recent Supreme Court caselaw only confirms that principle.

Amazon further argues that, even if Plaintiff is exempt from the FAA, its arbitration agreement is still enforceable against him under state law, namely Delaware law, which it changed its arbitration agreement after *Rittmann* to provide would apply in the event the FAA does not apply. But this argument fails for two reasons. First, Amazon conveyed its arbitration provision in an *ex parte* communication to Fields, a putative class and collective action member, rendering it invalid. Amazon cannot escape the federal court ruling that Amazon drivers cannot be compelled to

arbitration by rolling out a new agreement to cover putative class members in the *Rittmann* case, such as the plaintiff in this case. Second, even if the Court were to look at state law for Plaintiff, Georgia's conflict of law rules requires application of Georgia law (and would not look to Delaware law, despite the reference to it in Amazon's agreement). Under Georgia law, Amazon's arbitration agreement is unenforceable because it waived Fields' right to a jury trial and was never initialed.

This Court should therefore deny Amazon's Motion to Compel Arbitration and Stay Litigation, thus joining the growing number of courts to hold that Amazon Flex drivers are not bound to arbitrate their wage claims against Amazon.

## II.  ARGUMENT

### A.  Plaintiff did not waive his challenge to Amazon's arbitration provision by filing a demand for arbitration against Amazon.

Amazon first argues that Plaintiff Fields waived his objection to arbitration by filing an arbitration demand. (Def.'s Mem. 7). But no rule requires a litigant to choose between initiating an arbitration and objecting to arbitration. To the contrary, federal circuit courts have uniformly held that participating in an arbitration does not preclude a litigant from objecting to arbitrability in court, so long as the arbitrability objection is "made on a timely basis." *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 15 (1st Cir. 2023) (quoting *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996)); *see also Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 606 (7th Cir. 2008).

Nor is there "any bright-line rule as to when a party's participation in arbitration proceedings becomes so extensive as to preclude a challenge to arbitral jurisdiction." *Ribadeneira*, 65 F.4th at 16. That said, "there is broad agreement among the federal courts of appeal that a jurisdictional objection comes too late if it is only raised after the arbitrator has ruled on the merits." *Id.* at 15 (citing other precedent). These courts have reasoned that vacating an arbitrator's decision after "the pursuit of discovery, the submission of briefs, and the holding of hearings would be" inefficient and unfair. *Id.* at 16. Nothing of the sort occurred here.

Fields filed his arbitration demand *pro se* in August 2023. (Lynch Decl. ¶ 3, ECF No. 11-3). Less than three months later, he withdrew his arbitration demand to "file a case in court." (Lynch Decl. ¶ 6). AAA, in turn, closed its file. (Lynch Decl. ¶ 7). In arbitration, the parties never exchanged discovery, submitted briefs, or participated in hearings. In fact, AAA terminated the arbitration before the "initial conference," as Amazon's counsel admits. (Lynch Decl. ¶ 6). These facts do not justify waiver.

Nor do the decisions that Amazon cites warrant a different conclusion. Unlike the employer in *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, Fields did not wait for an adverse ruling from the arbitrator before challenging arbitrability. 611 F.2d 580, 584 (5th Cir. 1980). Nor is Fields trying to "have his case and eat it too," like the plaintiff

4

in *Mays v. Lanier Worldwide, Inc.*, 115 F. Supp. 2d 1330, 1343 (M.D. Ala. 2000). Unlike the *Mays* plaintiff, Fields did not "vigorously" prosecute his claims in arbitration, lose, then seek a second chance in court. *Id.*

Because Fields' conduct does not preclude his objection to arbitrability, the Court should reject Amazon's waiver argument. Put simply, Amazon cannot escape a substantive ruling on its unenforceable arbitration provision.

## B.     Fields is exempt from the Federal Arbitration Act.

Fields qualifies for the Federal Arbitration Act's "transportation worker exemption," 9 U.S.C. § 1. The exemption applies to a (1) "contract of employment" (2) with a worker who plays a direct role in transporting goods (3) "across borders via the channels of foreign or interstate commerce." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022). Just as the Ninth Circuit determined in *Rittmann*, the facts here satisfy all three elements of the exemption.

The Supreme Court has construed "contracts of employment" to mean all "agreements to perform work." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 121 (2019). The FAA's transportation worker exemption therefore applies to both agreements with employees and independent contractors. *Id.* at 115. Thus, Fields worked under a "contract of employment," for purposes of the exemption, no matter his classification.

5

As for the exemption's second element, it is beyond dispute that Fields transported goods as an Amazon Flex driver. In fact, Amazon concedes this point:

> Delivery Partners characteristically pick up batches of prepackaged items in their selected geographic areas and deliver those items to customers in the same geographic areas using ordinary vehicles like their personal automobiles.

(Rodgers Decl. ¶ 21, ECF No. 11-2).

In the end, the only element that Amazon disputes is whether Fields was engaged in interstate commerce. To that end, Amazon argues that Fields fails to qualify for the FAA's transportation worker exemption because he never himself transported goods across state lines. (Defs.' Mem. 15) (citing *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (11th Cir. 2021)). Courts have rejected this argument.

Indeed, numerous courts have found that Amazon Flex delivery drivers who make the final leg of intrastate deliveries are engaged in interstate commerce and are thus exempt from the FAA. In addition to *Rittmann*, 971 F.3d 904, *see also Miller v. Amazon.com, Inc.*, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023), *cert. denied*, 144 S. Ct. 1402 (2024); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020), *cert denied*, 141 S. Ct. 2886 (2021); *Miller v. Amazon.com, Inc.*, 2021 WL 5847232, at *4 (W.D. Wash. Dec. 9, 2021), *aff'd*, 2023 WL 5665771 (9th Cir. Sept. 1, 2023); *Jackson v. Amazon.com, Inc.*, 559F. Supp. 3d 1132, 1142 (S.D. Cal. 2021); *Muhammad v. Battle-Tested Strategies, LLC*, 2021 WL 6298348, at * 1 (C.D. Cal. Dec. 2,

2021) (finding employees of an Amazon "Delivery Service Partner," performing similar work to Amazon Flex drivers, to be exempt under Section 1); *Betancourt v. Transportation Brokerage Specialists, Inc.*, 162 Cal.App.5th 552 (2021) (same).

These opinions align with the Supreme Court's decision in *Saxon*, holding that airline cargo loaders were exempt from the FAA under Section 1. 596 U.S. at 450. The Court clarified that "any such exempted worker must at least play a direct and necessary role in the free flow of goods across borders." *Id.* at 451 (internal quotation marks and citation omitted). Despite never transporting goods across state lines, the "[c]argo loaders exhibit[ed] this central feature of a transportation worker. *Id.* ("our case law makes clear that airplane cargo loaders plainly do perform 'activities within the flow of interstate commerce' when they handle goods traveling in interstate and foreign commerce").

Like the cargo loaders in *Saxon*, Amazon Flex drivers like Fields belonged to a class of workers that played a direct and necessary role in the transportation of goods across state lines. In fact, Amazon's own declaration confirms that the company relied on "delivery partners" like Fields to transport goods across state lines:

> For instance, third-party wholesalers, manufacturers, and sellers ship their products to Amazon fulfillment centers, where Amazon warehouses many products.
>
> Amazon uses long-haul tractor-trailers and aircraft to move some goods from third-party wholesalers, manufacturers, and sellers to Amazon fulfillment centers[.]

7

> Delivery Partners then assume responsibility for taking the cart/bag to their personal vehicles, arranging and loading the items in their vehicles, and delivering the batch of items to their local destinations.

(Rodgers Decl. ¶ 8, 10, 19).

Amazon's reliance on *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (11th Cir. 2021), is misplaced. The Eleventh Circuit's reasoning in *Hamrick*, finding that workers engaged in intrastate transportation of goods within the flow of interstate commerce are not exempt under Section 1, cannot be reconciled with the Supreme Court's subsequent binding decision in *Saxon*. The *Saxon* Court concluded that airplane cargo loaders who themselves **never** crossed states lines nonetheless fell within the exemption because of their direct involvement in transporting goods across state lines. *Id.* Here, the same is true of Amazon Flex delivery drivers like Fields who may or may not cross state lines in the course of their deliveries but who are plainly "directly involved in transporting goods" that have crossed state lines as part of the flow of interstate commerce.

Amazon also cites *Nunes v. LaserShip, Inc.*, 2023 WL 6326615, at *3 (N.D. Ga. Sept. 28, 2023), for the proposition that *Saxon* does not overrule *Hamrick*. Besides being nonbinding, *Nunes* reached the wrong decision. The district court in *Nunes* held that it was bound by *Hamrick* because *Saxon* "left open the question of whether 'last leg' delivery drivers . . . fall within Section 1's exemption." The district

8

court otherwise failed to engage with *Saxon's* reasoning, which provides that workers need not themselves transport goods across state lines.

Consistent with *Saxon*, and all the courts that have applied Section 1's transportation worker exemption to Amazon Flex drivers, this Court should hold that the FAA does not apply here.

### C. Amazon implemented its arbitration provision through an *ex parte* communication with Fields, rendering the provision unenforceable.

Amazon allegedly communicated its arbitration provision to Fields in 2022. (Rodgers Decl. ¶ 23). By that point, other Amazon Flex drivers had already filed a nationwide collective and class action against Amazon. *See Rittmann*, 971 F.3d at 915 ("Plaintiffs seek to bring the FLSA claims as a nationwide collective action and their state claims as state-wide class actions."). In other words, Fields was a putative class member at the time he received Amazon's arbitration provision, making it an improper *ex parte* communication. The Court should therefore invalidate the provision using its authority to regulate communications between Amazon and putative class and collective action members.

District courts have the inherent authority to regulate communications with putative class members under Rule 23 and potential opt-in plaintiffs under the FLSA. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100–01 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control

9

over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (discussing the district court's duties in FLSA collective actions, relying on *Gulf Oil*).

Using this authority, courts have barred defendants from limiting their liability through *ex parte* communications with putative class members and thus impacting their ability to bring claims that have already been filed on their behalf through a class action. *See Sjoblom v. Charter Commc'ns*, LLC, 2007 WL 5314916, at *1 (W.D. Wis. Dec. 26, 2007), *order clarified*, 2008 WL 4510581 (W.D. Wis. Jan. 25, 2008) ("Defendants may not contact potential class members without seeking prior consent of this court and without fully disclosing the nature of the lawsuit and the class member's potential interest in it.") (emphasis added); *see also Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (holding that Rule 23 authorizes a court to regulate communications between a party and class members, even before a class has been certified); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384 (E.D. La. Feb. 25, 2002) ("[W]here an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on ex parte contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule."); *Guifu Li v. A Perfect Day Fran., Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) ("[T]he underlying rationale . . . does not depend on the certification of the class but instead on the inherent

undermining of the class action process when [exclusion agreements] are solicited ex parte."); *Burrell v Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) (same).

As the Eleventh Circuit has explained, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985). "The damage from misstatements could well be irreparable." *Id.* "Regardless of whether these communications occur before or after class certification, the effect is still the same[.]" *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (requiring curative notice and prohibiting employer from discussing the lawsuit directly with potential class members). Consistent with these principles, the Court should invalidate Amazon's arbitration provision as an *ex parte* communication with a potential class member.

Even if the Court were nevertheless to consider this new agreement that was distributed (notwithstanding that the *Rittmann* court held Amazon Flex drivers nationwide to be exempt from the FAA), as discussed in the next section, the agreement's choice of law provision purporting to apply Delaware law is not enforceable in Georgia. And Georgia law bars enforcement of Amazon's arbitration provision.

11

## D. Amazon's arbitration provision is unenforceable under Georgia law.

Amazon argues that "[e]ven if the FAA were inapplicable, Plaintiff's agreement would require him to arbitrate." (Def.'s Mem. 20). According to Amazon, "the TOS expressly provides for its enforcement under [Delaware] law as a fallback to the FAA." (Def.'s Mem. 20). Amazon then concludes that Delaware law, like the FAA, favors arbitration. (Def.'s Mem. 21). Amazon's analysis skips a step.

The Supreme Court has instructed district courts to "apply ordinary state-law principles that govern the formation of contracts" when "deciding whether the parties agreed to arbitrate a certain matter (including arbitrability)." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the state where the contract was formed. *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1023 (11th Cir. 2018). Accordingly, this Court must first look to Georgia law to determine whether the TOS's governing law provision—providing for Delaware law—is enforceable.

In Georgia, "contractual choice-of-law provisions are enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Motorsports of Conyers, LLC v. Burbach*, 892 S.E.2d 719, 722 (Ga. 2023) (internal quotation marks and citation omitted). Georgia's General Assembly codified this contract rule as Ga. Code. Ann. § 1-3-9. For this rule to

apply, the foreign law (here, Delaware law) must "seriously contravene" policy embodied in Georgia law. *Motorsports of Conyers*, 892 S.E.2d at 723. Assuming Delaware law requires this Court to enforce Amazon's arbitration provision, then Delaware law seriously contravenes Georgia law in two respects.

First, Georgia law prohibits "pre-litigation contractual waivers of the right to trial by jury." *SunTrust Bank v. Bickerstaff.*, 824 S.E.2d 717, 722–23 (Ga. App. 2019) (citing *Bank South, N.A. v. Howard*, 444 S.E.2d 799 (1994)). Here, the arbitration provision, allegedly agreed to before litigation, purports to waive Fields' right to a jury trial, rendering it unenforceable under Georgia law. (Rodgers Decl. ¶ 23, Ex. A ¶ 11(a)). Second, the Georgia Arbitration Act, Ga. Code Ann. § 9-9-2(c)(9), bars any agreement "relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement. The parties did not initial Amazon's arbitration provision, so the provision is unenforceable under Georgia law.

In sum, there are two grounds for declaring Amazon's arbitration provision unenforceable under Georgia law. Georgia law therefore seriously contravenes Delaware law, insofar as Delaware law requires arbitration, as Amazon suggests. Thus, Georgia law, not Delaware law, must apply. And Georgia law renders the arbitration provision unenforceable.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Amazon's Motion to Compel Arbitration and Stay Litigation.

Dated: July 15, 2024

Respectfully submitted,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

Jeremy E. Abay (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
76 E. Euclid Avenue, Suite 101
Haddonfield, NJ 08033
(856) 509-5346
jabay@llrlaw.com

William S. Cleveland
Georgia Bar No. 721593
POOLE HUFFMAN, LLC
3562 Habersham at Northlake
Building J, Suite 200
Tucker, GA 30084
(404) 373-4008
billy@poolehuffman.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, certify that on July 15, 2024, a true and accurate copy of the foregoing document was served on counsel for Defendant by filing on the Court's CM/ECF system.

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
